<u>NOT RECOMMENDED FOR PUBLICATION</u>

No. 19-1506

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 20, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| DAVID KENT CHAPLIN, ) | |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | ON APPEAL FROM THE UNITED |
| v. ) | STATES DISTRICT COURT FOR |
| ) | THE EASTERN DISTRICT OF |
| BETH A. ANDERSON, et al., ) | MICHIGAN |
| ) | |
| Defendants-Appellees. ) | |

O R D E R

Before: SUHRHEINRICH, COOK, and READLER, Circuit Judges.

David Kent Chaplin, a pro se Michigan prisoner, proceeding in forma pauperis, appeals a district court's judgment dismissing his civil rights complaint filed pursuant to 42 U.S.C. § 1983 and state law. This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a).

Chaplin filed suit against his ex-wife (Beth Anderson), her daughter (Sarahanne Anderson-Kevelin), their attorneys (Michael Kelly, Jeffrey Worosz, Garry Greenberg), a police detective (Jon Peters), and a state judge (Judge Karen McDonald), raising claims related to a personal protection order ("PPO") and his divorce proceedings.

According to the complaint, Anderson-Kevelin reported to police in the summer of 2014 that Chaplin had molested her. Upon the advice of Peters, Anderson-Kevelin obtained a PPO against Chaplin, which Judge McDonald issued at an ex parte hearing. At a hearing on Chaplin's motion to terminate the PPO, Judge McDonald allegedly had Peters confirm to Attorney Kelly that having Anderson-Kevelin testify under oath was "not a good idea." Judge McDonald likewise

informed Chaplin, who was proceeding pro se, that she did not want him to jeopardize his right to remain silent. Consequently, neither Anderson-Kevelin nor Chaplin testified.

At an ex parte hearing in 2015, Judge McDonald granted Attorney Kelly's request to renew the PPO but allegedly did not make a finding that Anderson-Kevelin was in harm's way. At hearings in 2016 and 2017, Judge McDonald extended the PPO a second and third time, again without allegedly making the necessary finding of risk. Chaplin moved to terminate the PPO to contest allegations that he had attempted to contact Anderson-Kevelin through family members. Allegedly, Attorney Worosz falsely argued that Chaplin had contacted Anderson-Kevelin's mother. After Anderson-Kevelin failed to confirm that Chaplin had attempted to contact her personally within the past year, Chaplin attempted to testify. Judge McDonald, however, interrupted and stated that he was being "too ridiculous" and was not allowing her to talk so that she could rule in his favor. She then allowed the PPO to expire. Because the judge did not instead terminate the PPO, the court clerk allegedly did not remove information regarding the PPO from the Law Enforcement Information Network.

Meanwhile, Anderson filed for divorce from Chaplin in the fall of 2014, and Chaplin proceeded pro se. In early 2015, a scheduling conflict arose between a divorce hearing and a criminal hearing on criminal sexual conduct charges against Chaplin. He advised Anderson of the conflict, but Attorney Greenberg did not reschedule the divorce hearing and informed Judge McDonald that Chaplin had chosen not to attend. Another conflict occurred a few months later, and Attorney Greenberg again did not reschedule the hearing and gave Judge McDonald the same reason for Chaplin's absence. At a subsequent hearing, Chaplin appeared and explained his absence, but the judge stated that it was Chaplin's responsibility to contact the court clerk about conflicts. The judge instructed Chaplin that he either had to agree to the terms of the divorce settlement that day or pay Anderson's attorney's fees. Chaplin did not accept the terms.

Divorce proceedings were stayed when Chaplin filed for bankruptcy. Following the final decree of bankruptcy in 2016, Anderson moved to reopen divorce proceedings and allegedly made false statements regarding the bankruptcy. At a hearing where Chaplin was not present, Attorney

Greenberg asked Judge McDonald to issue an ex parte order to the Sheriff's Department to release Chaplin's firearms to Anderson. Although Judge McDonald expressed doubt about her jurisdiction to do so and various false statements allegedly were made regarding how the Sheriff's Department acquired the firearms, Judge McDonald conditionally released them to Anderson pending final distribution of the marital estate.

Anderson's subsequent motion for entry of judgment of divorce allegedly contained fraudulent information regarding Chaplin's purported lack of cooperation, his bankruptcy filing, and other matters and sought to revoke his right to participate further. At an ex parte hearing, Attorney Greenberg conceded that Chaplin had filed a response and requested to appear by videoconferencing. The hearing was then adjourned.

At the divorce trial, Judge McDonald indicated that she had not received Chaplin's response to the motion for a divorce judgment and asked him to present his argument orally. When Chaplin balked at doing so, the judge replied, "I wouldn't read the response in lieu of your—your verbal argument anyway. Go ahead." Judge McDonald then proceeded to distribute the marital estate as requested by Anderson, relying on allegedly false statements by Attorney Greenberg and without requiring appraisals of the property.

Based on these and other allegations in the complaint, Chaplin asserted that Judge McDonald was biased against him and conspired with the other defendants to commit fraud, obstruct justice, and violate his rights of access to the courts, due process, liberty, and equal protection. Chaplin also asserted that the defendants committed various state torts and crimes.

Chaplin challenged the issuance of the PPO as unfounded, relying on Anderson-Kevelin's later testimony at Chaplin's criminal trial that she had a loving relationship with him. Chaplin challenged the extensions of the PPO on the grounds that Anderson-Kevelin was not at risk at the time of (a) the 2015 hearing because he had been falsely arrested by Peters and the conditions of Chaplin's bond restricted his travel, and (b) the 2016 and 2017 hearings because he had by then

been convicted and imprisoned.¹ Chaplin contended that the PPO was extended merely to harass him and that the judge deprived him of his right to testify at the final 2017 hearing and establish new evidence for his criminal appeal. Finally, Chaplin asserted that Judge McDonald had not fairly divided the property in the divorce proceedings.

For relief, Chaplin requested: criminal prosecution of the defendants for conspiring to violate his civil rights; deprivation of his civil rights; mail fraud; and wire fraud, *see* 18 U.S.C. §§ 241, 242, 1341, 1342; termination of the PPO; removal of the PPO entry from the Law Enforcement Information Network; expungement of court records regarding the PPO; nullification of the judgment of divorce with respect to debts owed by Chaplin and ownership of the firearms; monetary relief; and any necessary injunctive relief.

Without service on the defendants, a magistrate judge recommended dismissing Chaplin's complaint for the following reasons. Judge McDonald had absolute judicial immunity from claims for monetary damages, and the district court also lacked jurisdiction over the claims against her under the *Rooker-Feldman* doctrine.² A claim against Peters for false arrest was barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), and he had absolute witness immunity for his testimony at the PPO hearings and Chaplin's criminal trial. A private citizen could not charge others with criminal offenses, and the remaining defendants were not state actors subject to suit under § 1983. The magistrate judge recommended that the district court decline supplemental jurisdiction over the state-law claims.

Over Chaplin's objections and upon de novo review, the district court adopted the magistrate judge's report and recommendation and dismissed the action pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim. Among other things, the court noted that it was appropriate to decline to exercise supplemental jurisdiction due to the lack of diversity of citizenship.

---

¹ *People v. Chaplin*, No. 331190, 2017 WL 2130265 (Mich. Ct. App. May 16, 2017), *perm. app. denied*, 907 N.W.2d 568 (Mich. 2018) (mem.).

² *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

On appeal, Chaplin reasserts his claims and contests the district court's conclusions. He argues that Judge McDonald was amenable to suit for declaratory relief because she did not act as a "disinterested judicial adjudicator," *Cooper v. Rapp*, 702 F. App'x 328, 333 (6th Cir. 2017), and that the *Rooker-Feldman* doctrine does not apply because his requests for relief were based upon unconstitutional procedural violations and unconstitutional judgments. He asserts that he was contesting Peters's actions in only the PPO proceedings and that he was not challenging his own criminal convictions. While Chaplin alleges that he was not suing to enforce criminal laws, he simultaneously contends that a private party may bring claims under criminal law and that all defendants should be criminally prosecuted. He argues that the private defendants should be deemed to be state actors under the joint-action, conspiracy, or nexus theories. Furthermore, Chaplin contends that the district court had diversity jurisdiction over the state-law claims because Anderson is a citizen of Wisconsin.

We review de novo a district court's judgment dismissing a complaint pursuant to § 1915(e)(2). *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). A district court may dismiss a complaint under § 1915(e)(2) if the complaint is frivolous, is malicious, fails to state a claim, or seeks monetary relief from a defendant entitled to immunity. 28 U.S.C. § 1915(e)(2)(B).

In determining whether a complaint states a claim, a court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295–96 (6th Cir. 2008).

We conclude that the district court properly dismissed the claims against Judge McDonald. Chaplin conceded in his complaint that the judge was immune from civil suit for monetary damages. *See Mireles v. Waco*, 502 U.S. 9, 9–10 (1991). Thus, to the extent that Chaplin's claims seek monetary relief for alleged fraud and bias, Judge McDonald has absolute immunity. Moreover, the claims seeking relief from the PPO and divorce proceedings are barred under the *Rooker-Feldman* doctrine, which bars "cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "[T]he pertinent inquiry . . . is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment . . . ." *Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010) (quoting *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006)). "This is true regardless of whether the party challenges the validity of the state court judgment on constitutional grounds." *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction." *McCormick*, 451 F.3d at 393.

Here, Chaplin expressly sought relief from Judge McDonald's rulings in the PPO and divorce proceedings. Although he contends that *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998), creates an exception to the *Rooker-Feldman* doctrine, this argument fails because *Catz* is no longer good law in light of *Exxon Mobil*. *See Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir. 2006).

To the extent that Chaplin raised a claim below against Peters for his actions in the criminal proceedings, we decline to address it because Chaplin has disavowed it on appeal and thus abandoned it. *See Duffey v. Nationstar Mortg.*, 614 F. App'x 330, 334–35 (6th Cir. 2015). To the extent that Chaplin sought to raise a claim against Peters for testimony during the PPO proceedings, the claim fails because a testifying witness has absolute immunity from suit under § 1983. *See Rehberg v. Paulk*, 566 U.S. 356, 367 (2012).

Chaplin failed to state a claim against the remaining defendants. Liability under § 1983 arises where a person acts under color of state law to deprive another of rights protected by the Constitution or federal law. *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 478 (6th Cir. 2014). Anderson and Anderson-Kevelin are not state officials. And their attorneys, despite being officers of the court, are not de facto state actors for purposes of § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 318 (1981); *Otworth v. Vanderploeg*, 61 F. App'x 163, 165-66 (6th Cir. 2003).

Nonetheless, state action by a private actor "may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)); *see Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 676 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1551 (2019) (observing that our previously announced state-action tests "boil down" to the test announced in *Brentwood Academy*). Although Chaplin argues otherwise, his complaint does not establish a close nexus, but instead describes commonplace interactions between private individuals, attorneys, police officers, and a court.

Chaplin's request for criminal prosecution of the defendants fails because a private citizen cannot compel a criminal investigation or prosecution against another. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 767 n.13 (2005); *Sefa v. Kentucky*, 510 F. App'x 435, 438 (6th Cir. 2013).

The district court did not abuse its discretion when it declined to exercise supplemental jurisdiction over Chaplin's state-law claims because there was no independent basis for federal jurisdiction over them following the dismissal of the federal-law claims. *See* 28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009). Diversity jurisdiction over the state-law claims did not exist because Chaplin was not a citizen of a State different from all of the defendants. *See* 28 U.S.C. § 1332(a)(1); *Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 955 (6th Cir. 2017). Only defendant Anderson is alleged to be a citizen of a State different from Chaplin.

We decline to consider Chaplin's claim that the district judge and magistrate judge were biased because it was not raised in the district court. Nonetheless, we note that Chaplin's claim concerns judicial rulings, which "almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Burley v. Gagacki*, 834 F.3d 606, 617 (6th Cir. 2016). "Also not subject to deprecatory characterization as 'bias' or 'prejudice'

are opinions held by judges as a result of what they learned in earlier proceedings." *Liteky*, 510 U.S. at 551.

Accordingly, we **AFFIRM** the district court's judgment. All pending motions are **DENIED** as moot.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk